45 F.3d 437
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 TRANSAMERICA CORP.; Transamerica Occidental Life,
Plaintiffs/Appellees-Cross-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Defendant/Appellant-Cross-Appellee.
 Nos. 93-55490, 93-55498.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 2, 1994.
Decided Dec. 19, 1994.
 
 1
 Before: O'SCANNLAIN and T.G. NELSON, Circuit Judges; MERHIGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 * National Union argues that the district court erred in ruling that the ADR provision in the settlement agreement did not bar litigation of open matter 4(b). In paragraph 6 of the settlement agreement, the parties agreed that "[t]he open matter identified in paragraph 4(b) ... shall be negotiated between the parties between July 1, 1991 and August 31, 1991. If agreement cannot be reached on said open matter, the parties will utilize an alternative dispute resolution mechanism to resolve the matter."
 
 
 4
 Though the parties failed to specify which ADR procedure they intended to utilize, we find guidance in the cases involving waiver of arbitration rights.[1] A party waives its right to arbitration if it "(1) has previously taken steps inconsistent with an intent to invoke arbitration, (2) has unreasonably delayed in seeking arbitration, or (3) has acted in bad faith or with willful misconduct." Keating v. Superior Court of Alameda County, 645 P.2d 1192, 1204 (Cal.1982), rev'd in part on other grounds, Southland Corp. v. Keating, 465 U.S. 1 (1984). Also, the opposing party must have been prejudiced. Id. at 1204.
 
 
 5
 National Union unreasonably delayed seeking arbitration. Although it filed a motion to dismiss based on the ADR provision, it did not pursue the matter when the district court denied the motion. Rather than seeking interlocutory review or filing a motion to compel arbitration and appealing that motion if it were denied, National Union chose to proceed with litigation by answering the complaint with a list of affirmative defenses and filing a motion for summary judgment on the merits. See Kaneko Ford Design v. Citipark, Inc., 249 Cal.Rptr. 544, 549 (Ct.App.1988) (party unreasonably delayed seeking arbitration by doing nothing to obtain further stay after first stay application was rejected, and by waiting to file motion to compel arbitration); Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993) (in order to retain right to arbitration, party must use Sec. 16(a) of the FAA to obtain immediate interlocutory appellate review of the denial of his motion to compel arbitration). Further, by filing motions for summary judgment on the merits, asserting numerous defenses other than the ADR provision, and seeking discovery, National Union acted inconsistently with an intent to arbitrate. See Hennefer v. Butcher, 227 Cal.Rptr. 318, 324 (Ct.App.1986) ("[J]udicial litigation of the merits of arbitrable issues ... waives a party's right to arbitration.") (citation omitted).
 
 
 6
 Finally, National Union prejudiced Transamerica by proceeding with the litigation. "Prejudice is derived from the fact the opposing party must bear the costs of trial preparation, which arbitration is designed to avoid, and also results from the disclosure of defenses and strategies." Zimmerman v. Drexel Burnham Lambert, Inc., 252 Cal.Rptr. 115, 118 (Ct.App.1988) (citations omitted). Through Transamerica's objections to its motions for summary judgment and supporting declarations, National Union learned of Transamerica's strategies and defenses. All of National Union's motions also cost Transamerica much time and money.
 
 
 7
 Because National Union unreasonably delayed seeking alternative dispute resolution, took actions inconsistent with an intent to arbitrate, and prejudiced Transamerica, it waived its contractual right.
 
 II
 
 8
 National Union argues that the fidelity bond's exclusion clause precludes coverage of Transamerica's claim for damages because Transamerica's losses are liabilities under its credit insurance policies. To reach this conclusion, National Union relies on a Seventh Circuit case, Continental Corp. v. Aetna Casualty & Surety Co., 892 F.2d 540 (7th Cir.1989).
 
 
 9
 We, however, prefer to rely on Insurance Company of North America v. Gibralco, Inc., 847 F.2d 530 (9th Cir.1988), which held that the insured's losses resulted from employee dishonesty. Similarly, Transamerica's losses were caused by Jain's dishonesty and so were not precluded by exclusion (o).
 
 III
 
 10
 National Union argues that Transamerica failed to mitigate its damages after discovering the dishonest cancellation of the MIC reinsurance. We reject this argument. The district court did not grant damages for losses after March 31, 1988. Since National Union did not have to cover these losses, its mitigation defense related to post-March 31, 1988 losses is meaningless.
 
 
 11
 Neither did Transamerica fail to mitigate losses incurred between September 1, 1987 and March 31, 1988. Transamerica's contracts with its agents required it to give them at least thirty days notice before ordering them to stop selling the credit insurance policies. Even if Transamerica had halted its credit insurance business as soon as it discovered its employee's dishonesty in early March, its agents could have continued to sell the policies at least until the end of March.
 
 IV
 
 12
 National Union argues that the district court improperly calculated Transamerica's damages. California law states that the aim of calculating damages "is to put the injured party in as good a position as he would have been had performance been rendered as promised." Brandon & Tibbs v. George Kevorkian Accountancy Corp., 277 Cal.Rptr. 40, 47 (Ct.App.1990). "Where there is more than one method of ascertaining damages, that method which is most definite and certain should be adopted." A.A. Baxter Corp. v. Colt Indus., Inc., 88 Cal.Rptr. 842, 852 (Ct.App.1970).
 
 
 13
 National Union's method of calculation only established a range of damages. Because Transamerica's method of calculation was more definite and certain, the district court acted properly in adopting it.
 
 V
 
 14
 National Union argues that the district court erred in refusing to recognize National Union's right under the settlement agreement to offset a certain amount from any damages it might have to pay Transamerica.
 
 
 15
 The settlement agreement, however, only provided that "National Union retains the right to assert credits or offsets as follows...." (emphasis added). By filing its motion for summary judgment on the offset issue, National Union was able to assert its right to a certain offset, even though that assertion was rejected.
 
 VI
 
 16
 Transamerica argues that National Union acted in bad faith. Transamerica also argues that it should recover prejudgment interest. We reject these claims as barred by paragraph 10 of the settlement agreement.
 
 VII
 
 17
 Transamerica argues that it was entitled to recover for post-March 31, 1988 losses.
 
 
 18
 Transamerica is wrong in asserting that the post-March 31, 1988 losses were caused by employee dishonesty and thus were covered by the fidelity bond. The MIC reinsurance, if it had not been retroactively cancelled, would have covered only the credit insurance policies issued through March 31, 1988. Any claims on policies Transamerica issued after March 31 would not have been covered by MIC reinsurance. Therefore, Transamerica is not entitled to damages for post-March 31, 1988 losses.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We do not mean to suggest that arbitration and other ADR procedures are interchangeable. Indeed, "alternative dispute resolution" is an umbrella term encompassing such diverse procedures as arbitration, mediation, and the summary jury trial or mini-trial. John F. Wagner, Jr., Validity and Effect of Local District Court Rules Providing for Use of Alternative Dispute Resolution Procedures as Pretrial Settlement Mechanisms, 86 A.L.R.Fed. 211, 212 (1992) (footnotes and quotations omitted). However, we rely in this context on arbitration decisions both because it is an ADR procedure that National Union could have sought pursuant to the settlement agreement and because arbitration has behind it many years of court decisions interpreting contract provisions calling for arbitration